IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § § | CASE NO. 3:20-cr-00452-E-1 |
| ISAAC JALEN MOORE | § § § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Isaac Jalen Moore's Objection to Detention Order, Brief in Support and Request for Hearing, which the Court construes as a Motion to Revoke Order of Detention (Doc. No. 34). After careful consideration of the Motion, the Government's response, the record, and the applicable law, the Court denies the Motion.

### I.    Background

Defendant was initially charged by criminal complaint with both Conspiracy to Distribute a Controlled Substance and Possession of a Firearm by a User of a Controlled Substance. On September 22, 2020, Defendant was indicted for 1) Conspiracy to Possess with Intent to Distribute a Controlled Substance; 2) Possession of a Firearm by an Unlawful User of a Controlled Substance; and 3) Possession of a Firearm by a Prohibited Person.

On August 26, 2020, Magistrate Judge Ramirez held a hearing and released Defendant subject to certain conditions of pretrial release, one of which was that Defendant must not violate federal, state, or local law while on release. In addition, Defendant was to refrain from the use of narcotic drugs or other controlled substances unless prescribed by a medical practitioner and to submit to drug testing as directed. Defendant's residence was restricted to "mother's home and

1

NDTX & EDLA." Upon release, Defendant went to Louisiana where he was supervised by a probation officer in the Western District of Louisiana.

Just over a month after Defendant's pretrial release, on September 29, 2020, a Report of Violation of Conditions of Release was filed. The report was by U.S Probation Officer Kyle Wolf, who was assigned to monitoring Defendant in the Northern District of Texas, and stated:

> On September 23, 2020, the defendant was directed to provide a sample for urinalysis by his substance abuse provider in Monroe, Louisiana. The substance abuse provider contacted the defendant around 9:30 a.m. and the defendant was informed he could report to the office around 3:00 p.m. The defendant advised he could not report to the office because he did not have transportation and did not report to the office. The defendant contacted his supervising officer, U.S. Probation Officer (USPO) Mark Miller, the following day. He initially reported he could not report as instructed because he was in Tallulah, Louisiana, and had a family emergency. He further noted he was directed to report around 2:00 p.m. USPO Miller informed the defendant he knew the substance abuse provider contacted him around 9:30 a.m. and the defendant corrected himself and stated he was contacted by the substance abuse provider around 9:30 a.m. On the same day, USPO Miller and Supervisory U.S. Probation Officer (SUSPO) Vidrine spoke with the defendant and the defendant stated he could not report for the random urinalysis because he does not have a vehicle. The defendant's mother commented they would like advanced notice for when he should appear to be screened for substances and was informed the defendant would be given random notification with ample time to report to submit the sample.

Magistrate Judge Ramirez issued a summons for Defendant to appear on October 16, 2020. On that date, a supplemental report of violation of Defendant's pretrial release conditions, also by USPO Wolf, was filed. It said:

> On October 16, 2020, [Defendant] submitted a urine specimen to the U.S. Pretrial Services Officer Kyle Wolf that appeared to be diluted. An instant test of the specimen was taken and showed possible use of marijuana. [Defendant] was confronted about the diluted specimen and the instant test results. [Defendant] admitted verbally and in writing that he in fact used marijuana on September 12, 2020.

At Defendant's October 16, 2020, detention revocation hearing, USPO Wolf testified that he was the point of contact for Defendant in this district, but that Defendant had been allowed to

2

have his pretrial supervision monitored by the Western District of Louisiana. He confirmed that Defendant had been advised of his pretrial release conditions and indicated he understood what was expected of him.  USPO Wolf testified about Defendant's failure to show up to provide a urinalysis specimen on September 23, 2020. He also told the court the results of the instant test on the urinalysis sample Defendant provided that day. The urine sample provided by Defendant that day was diluted, and the instant test was inconclusive for marijuana. USPO Wolf and Senior U.S. Probation Officer Eric Zarete confronted Defendant about the specimen. At first, Defendant blamed the results of the test on an infection. Then he claimed, "it might be from a CBD product." Finally, Defendant admitted both verbally and in writing to using marijuana on September 12, 2020. USPO Wolf testified that because Defendant used marijuana on September 12, 2020, if he had given a urinalysis specimen on September 23, 2020, it would have tested positive for marijuana use.

At the conclusion of the revocation hearing, Judge Ramirez said:

> [B]ased on the condition of drug use, I do find probable cause to believe that a federal, state or local crime has been committed while on release, and that finding creates a rebuttable presumption that there are no conditions or combination of conditions that will assure appearance in court or safety to the community.

Judge Ramirez also stated that she could not find that Defendant was going to follow his conditions.  She revoked Defendant's pretrial release, and he was taken into custody.

## II.   **Applicable Law and Analysis**

Counsel for Defendant asks the Court to overturn the detention order.  When acting on a motion to revoke a magistrate judge's pretrial Order of Detention, a district court must perform a de novo review and an independent determination of the proper pretrial detention or conditions for release. *See United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985). The review does not

mandate a new evidentiary hearing, and the court may rely on the evidence introduced before the magistrate judge. *See United States v. Baker*, 703 F. Supp. 34, 36 (N.D. Tex. 1989).

Defendant's motion includes a request for a hearing. The Court finds the existing record sufficient to conduct its de novo review and denies Defendant's request for a hearing. To the extent Defendant is asking the Court to reopen his detention hearing, that request is denied as Defendant has failed to identify any new evidence he intends to present. *See* 18 U.S.C. § 3142(f); *United States v. Faulkner*, No. 3:18-CR-0500-B, 2020 WL 374543, at *6 (N.D. Tex. Jan. 23, 2020).

Title 18, section 3148(b) provides that a judicial officer *shall* enter an order of revocation of a previous release order if, after a hearing, the judicial officer:

    (1) finds that there is-

        (A) probable cause to believe that the person has committed a Federal, State or local crime while on release; or

        (B) clear and convincing evidence that the person has violated any other condition of release; and

    (2) finds that-

        (A) based on the factors set forth in § 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person in the community; or

        (B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. §3148(b); *United States v. Aron*, 904 F.2d 221, 223 (5th Cir. 1990). If there is probable cause to believe that, while on release, the person committed a Federal, State, or local *felony*, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person in the community. *Id.* With respect

to Section 3148(b)(2), a judicial officer need not necessarily find that the defendant will flee or pose a danger to the community; the statute clearly provides a finding that the defendant will not abide by any condition or combination of conditions of release is sufficient to justify revocation and detention. *See* U.S.C. §3148(b) (setting out required findings in the disjunctive); *see also United States v. Minor*, 204 F. App'x 453, 454-55 (5th Cir. 2006) (per curiam); *Aron*, 904 F.2d at 224 (court relied on finding defendant was unlikely to abide by conditions of release, "rather than upon the presumption that" he would pose danger to community). The finding that a defendant is unlikely to abide by any condition(s) of release may be established by a preponderance of the evidence. *Aron*, 904 F.2d at 224.

The Court notes that the magistrate judge improperly invoked the statutory rebuttable presumption that applies only when a defendant commits a felony offense while on pretrial release. *See* 18 U.S.C. § 3148(b); *United States v. Patel*, No. 3:19-CR-0462-M, 2020 WL 636823, at *3 (N.D. Tex. Feb. 10, 2020). Nevertheless, the Court concludes that revocation of Defendant's pretrial release is appropriate.

The record in this case presents clear and convincing evidence that Defendant violated a condition of his release. It also presents probable cause to believe Defendant committed a State crime while on release. Defendant admitted to smoking marijuana on September 12, 2020, which was not only a violation of his pretrial release conditions, but also a State crime. *See* LA. REV. STAT. §§ 964, 966 ("It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance classified in Schedule I unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner . . . , while acting in the course of his professional practice."). In addition, Defendant, when summoned to provide a urinalysis specimen as required by his pretrial release conditions, did not show up on the day he was asked to appear,

nor did he have any contact whatsoever with probation that day. The *following* day, he claimed not to have a vehicle, then claimed to be attending a family emergency out of town, and then claimed again that he had no access to a car.

Defendant acknowledges that his admission to USPO Wolf of "a single instance of drug use" is "a violation." But he argues that he has not demonstrated a repeated flouting of the rules. He contends his act of smoking marijuana does not increase the chance that he will flee the jurisdiction or be a danger to himself of others in the community. He submits that additional conditions could be imposed to assure his future appearance and the safety of the community. The brief repeats the arguments put forth during the detention hearing, with the exception that Defendant now mentions he is the father of two children, employed, and helping care for his ailing mother and pregnant sister. Defendant adds a fourth claim for why he was unable to take the September 24 drug test; he argues he has recently been living with his mother "whose transportation status has been hindered by car trouble and a lack of financial resources to pay for all needed repairs."

The Court finds that the preponderance of the evidence, including the violations, which occurred soon after Defendant was placed on conditions of release, and Defendant's dishonesty about using marijuana and his reasons for not appearing for urinalysis, substantiates a finding that he is unlikely to abide by any condition of combination of conditions of release. There is nothing in the record to suggest that Defendant would stop breaking the law and his pretrial conditions by smoking marijuana. At the time of his arrest, Defendant admitted to using marijuana daily and to selling it. About three weeks after being granted pretrial release, he committed the crime of possession of marijuana, which he admitted both orally and in writing. He refused to meet to give urinalysis samples to probation when called upon to do so, and Defendant went to great lengths

*not* to comply with his pretrial release conditions regarding use of controlled substances, telling three different stories to excuse his failure to provide a urinalysis sample. The Court, as was the magistrate judge, is troubled by the many excuses Defendant offered for not giving a urine sample when asked to. First, Defendant claimed he did not have transportation. Then Defendant claimed his pregnant sister had fallen, creating a family emergency that required him to travel out of town instead of fulfilling his pretrial obligations. Then Defendant again claimed not to have transportation.

Further, Defendant argues that the detention order has effectively removed the chance for the Court to consider the full range of punishment at sentencing. During the hearing with Judge Ramirez, Defendant argued that if his pretrial release was revoked, he "could very easily sit in custody waiting for this case longer than any sentence imposed by a district judge." In his brief, Defendant argues, as he did at the hearing, that his sentencing guideline range for the drug charge would likely be only 0-6 months. He states that even if he is convicted of *one* of the firearms offenses, the range would only slightly rise. According to the Government, Defendant's calculations are incorrect, and Defendant may be subject to a sentence ranging from 18-24 months. The Government's response points out that Defendant's potential sentencing guideline range is based only on the drug charge. Defendant leaves out the potential sentence for the weapons offenses, which makes the guideline range substantially higher, in the range of 18-24 months instead. The Court is not persuaded by this argument as it appears Defendant substantially understates the time he is facing if convicted on each count in the indictment against him.

Finally, Defendant argues the Order of Detention violated his procedural due process rights. First, he argues in his brief that Judge Ramirez failed to perform a proper analysis under 18 U.S.C. § 3148 (b)(2)(B) because "there was no consideration of whether additional or modified

conditions of release could be set that would ensure his appearance and the safety of the community." But the question of whether there are any conditions of release that will assure Defendant will not flee or pose a danger to the safety of any other person is found in § 3148(b)(2)(A). Judge Ramirez, and this Court in an independent review, found that under § 3148(b)(2)(B), Defendant is unlikely to abide by any condition or combination of conditions.

Defendant's Motion also makes another argument for why his continued detention is impermissible under the Due Process Clause. He argues that his job and the "continued care that can be provided to his two young children is at risk based on this detention." Defendant asserts his constitutional right to work has been violated by this Order of Detention and claims "[b]y the time the Court hears his objection, the Order of Detention will have deprived her [sic] of him [sic] procedural due process rights."

The Fifth Circuit, in *United States v. Hare,* 873 F.2d 796 (5th Cir. 1989), stated, "Because pretrial detention under the [Bail Reform] Act is regulatory, not penal, it does not constitute 'impermissible punishment before trial' that would violate due process." *Id.* at 800. *Hare* also said that excessively prolonged detention could become punitive, and therefore prohibited by the Due Process Clause of the Fifth Amendment. *Id.* at 800.

In deciding whether there has been a due process violation, the district court must consider on a case-by-case basis:

> [N]ot only factors relevant in the initial detention decision, such as the seriousness of the charges, the strength of the government's proof that the defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits, but also additional factors such as the length of detention that has in fact occurred or may occur in the future, the non-speculative nature of future detention, the complexity of the case, and whether the strategy of one side or the other occasions the delay.

*Id.* at 800–01. The Court finds that these factors weigh in favor of continued detention.

**Seriousness of the Charges**. Defendant is facing three serious charges after indictment. Defendant has been indicted for conspiracy to distribute a controlled substance, possession of a firearm by a user of a controlled substance, and possession of a firearm by a prohibited person.

**Strength of the Government's Case on the Merits**. In the affidavit of Texas Department of Public Safety Special Agent Waffer attached to the complaint, he narrates the evidence against Defendant. On August 20, 2020, DPS was performing surveillance at a gas station on Forest Lane in Dallas, Texas. During surveillance, they noticed Defendant, wearing a backpack, going from car to car at the gas station, and law enforcement believed Defendant was selling drugs as went from car to car. Defendant got into one car on two separate occasions, and DPS used a marked Highway Patrol unit to stop the car. Troopers immediately noticed that Defendant, who was in the passenger seat, was making movements in the front seat while the car was coming to a stop. The driver granted consent to search the car, and Defendant's co-defendant admitted she had marijuana in the car. The backpack in the passenger compartment with Defendant contained marijuana, a scale, and a .45 caliber handgun. After both Defendant and the co-defendant were arrested, and after being Mirandized, the co-defendant told law enforcement the guns in the car belonged to Defendant and she admitted to hiding a gun that had been in Defendant's waistband when they were stopped by law enforcement. She told police where the other gun was hidden in the car and gave law enforcement written consent to search her car again. Law enforcement found an additional 9mm pistol hidden in the car.

After being Mirandized, Defendant admitted to smoking marijuana every day, claimed the guns were not his, and claimed his co-defendant put the gun in his backpack. He also initially denied dealing drugs. He later admitted that he had been selling drugs for several weeks.

The Government has both an audio and video confession of Defendant admitting to dealing drugs and admitting that his co-defendant supplied the drugs for him to sell. They also have an audio and video confession of the co-defendant telling law enforcement she supplied the drugs the Defendant sold, and that the two guns seized, one of which was found in the backpack Defendant was seen wearing, belonged to Defendant. When searched, the backpack Defendant was seen wearing as he went from car to car contained a gun, marijuana, and a set of scales.

The Government appears to have a very strong case against Defendant.  Indeed, Defendant has recently entered into a plea agreement by which he pleads guilty to Possession of a Firearm by a Prohibited Person.

**Strength of the Government's Proof that Defendant Poses a Risk of Flight or Danger to the Community**.  Defendant did show up when summoned to a revocation hearing. From Defendant's counsel's argument, it appears when Defendant showed up for his revocation hearing he believed he was only facing a guideline range of zero to six months for his crimes. "And frankly, this offense, itself…is for about 26 grams of marijuana and less than a gram of any other substance. His guideline range for that offense is zero to six months for the narcotics."  It was only after that hearing that Defendant would likely have been advised of the 18-24-month guideline sentence possible in this case. Because Defendant appeared when he thought he was facing zero to six months in jail does not mean he would appear for court when facing a significantly higher possible sentence.

Defendant's failure to show up to for his urinalysis test and his many excuses when requested to do so gives this Court grave concerns about his willingness to show up to court, especially in light of his facing a higher possible sentence than he originally expected. The Court also has concerns about his conviction for a crime of violence against a pregnant woman.

Especially concerning is the recency of this crime, which occurred on March 3, 2020, and to which Defendant pleaded guilty on June 16, 2020. Defendant's prior conviction for a violent crime also presents credible concerns about the safety of the community if Defendant were released from custody. Though Judge Ramirez only needed to find that there was likely no condition or combination of conditions that Defendant would follow, there is a concern in this case that releasing Defendant may compromise the safety of the community. Defendant now asks this Court to release him to go back to a home where he will "help care for his mother who has been suffering from an infection and his sister who is pregnant." This Court is wary of sending an abuser back to a home, especially during a pandemic, where he will be in contact with another vulnerable, pregnant woman, considering his recent conviction for hurting such a woman.

Defendant's Motion does not present arguments or evidence to allay this Court's concerns about Defendant being a flight risk, other than to remind the Court that Defendant showed up to his revocation hearing with a summons voluntarily. Defendant's Motion also fails to address the issue of whether Defendant's release would be a threat to the safety of the community.

**Length of the detention that has in fact occurred.** In this case, Defendant has been incarcerated since he was taken into custody at his detention hearing October 16, 2020. This opinion will issue 40 days after he was incarcerated. This case is set for trial November 30, 2020. This trial was first scheduled on September 25, 2020. Defendant requested a three-month continuance, which the Court has denied. On November 21, 2020, the parties entered into a plea agreement by which Defendant has agreed to waive his right to a jury trial and plead guilty to Possession of a Firearm by a Prohibited Person.

11

**Length of detention that may occur in the future.**  This case is scheduled for a jury trial on November 30, 2020.  As stated, Defendant has recently signed plea papers and is awaiting sentencing shortly.  Thus, the future of Defendant's pretrial detention is not speculative.

**The complexity of the case.**  The Court has not been given any indication that this case will be complex.

**Whether the strategy of one side or another occasions the delay.**  The last factor the Court considers is whether the strategy of one side or the other occasions the delay. "Any delay occasioned by prosecutorial strategy may be a basis upon which an exceedingly lengthy pretrial detention offends due process." *Faulkner*, 2020 WL 374543, at *7 (quoting *United States v. Stanford*, 722 F. Supp. 2d 803, 810 (S.D. Tex. 2010)). The only possible delay in this case was due to a September 2, 2020 Joint Motion for an extension of time for an indictment, to which Defendant agreed. Defendant was indicted September 22, 2020, and the Court set this case for a jury trial to begin on November 30, 2020.  As stated, on November 5, Defendant moved to continue his trial date for 90 days; the Court has denied the request.

In sum, considering the above factors, the Court finds that Defendant's continued pretrial detention has not crossed the line from regulatory to punitive, such that it violates Defendant's due process rights.

Accordingly, for all the reasons stated above, the Court denies Defendant's Motion and affirms the Order of Detention.

**SO ORDERED.**

Signed November 25, 2020.

　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　Ada Brown
　　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE